IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                  No. 06-20087 B

JAMES A. KELLER,

    Defendant.
_____

ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS
_____

INTRODUCTION AND PROCEDURAL BACKGROUND

    The Defendant in this matter, James A. Keller, has been charged, in a seven-count indictment entered February 28, 2006, with possessing items containing visual depictions involving the use of a minor engaging in sexually explicit conduct, and of receiving such visual depictions, in violation of 18 U.S.C. § 2252.  The Government has also sought forfeiture of certain property associated with the Defendant's alleged illegal activities.  Before the Court are three motions filed on behalf of the Defendant to suppress evidence obtained pursuant to a search of the premises located at 1435 North 20th Avenue in Humboldt, Tennessee in December 2005 and the seizure of certain items therefrom.  Keller further seeks suppression of statements made during questioning by law enforcement personnel.  A hearing was conducted on the motions on September 28, 2006.

FACTUAL BACKGROUND

    On December 6, 2005, a search warrant was issued by Gibson County, Tennessee, General Sessions Judge James Webb to search the premises at 1435 North 20th Avenue, Defendant's residence, based on probable cause to believe that Keller was "in possession of contraband material,

to wit, legend drugs, to include Ritalin and other unknown pills and pornographic movies, magazines and electronic photographs stored on a computer." (Suppression Hrg. Transcript ("Trans."), Ex. 2 (Search Warrant))  In the affidavit submitted to the issuing judge in support of the warrant, Sgt. Dennis Wright of the Humboldt Police Department, who is now deceased, averred that

> he had good ground and belief and does believe that James Keller is in possession of contraband property, to wit: legend drugs to include Ritalin and other unknown pills and pornographic movies, magazines and electronic photographs stored on a computer, which is located at his residence at 1435 North 20th Ave. . . . and his reason for such belief is that . . . a fifteen year old female has told you affiant that her father, James Keller has had sexual intercourse with her and has given her pills to render her unconscious and has allowed her to view pornographic movies and books.
>
> Furthermore, Sidney Keller stated that she was given pills around the last week of September, 2005 when her father had sexual intercourse with her and she last saw pornographic pictures with her father during October, 2005.

(Trans., Ex. 1 (Aff. for Search Warrant))  Among the items seized on December 6, 2005 was a computer tower. (Trans, Ex. 3 (Evidence Log))

On December 12, 2005, a second search warrant was issued by Gibson County Circuit Court Judge Clayburn Peeples, stating that there was probable cause to believe Keller was "in possession of electronic or magnetic storage devices, including floppy diskettes, hard disks, ZIP disks, CD-ROMs optical disks, backup tapes, printer buffers, smart cards, as well as printouts or readouts from any magnetic storage device taken" from Keller's residence "including, but not limited to a computer tower marked ULTRA bearing serial number 104887623."  The warrant authorized immediate search of the computer and storage devices seized from the home for "child pornography and other depictions of illicit sexual activity." (Trans., Ex. 5 (Search Warrant))

According to the affidavit supporting the second warrant, also prepared by Sgt. Wright, the alleged victim reported that her father had "shown her pornographic videos, magazines and

2

photographs displayed on the computer" and that this had occurred over a period in excess of two years and most recently between late September 2005 to October 4, 2005. (Trans., Ex. 4 (Aff.)) In addition, Wright stated that during his 15-year tenure at the Humboldt Police Department he had investigated more than 50 cases of child abuse and child sexual abuse. He asserted as follows:

> As a result of my training and experience, I have learned that the following characteristics are generally found in varying combinations and be [sic] true in cases involving people who buy, possess, produce, trade or sell child pornography and who molest children:
>
> 1.   [For] [t]he sexual offender, especially the preferential sexual offender, the use of computers offers great appeal. The computer whether at home or at work provides a preferential sexual offender with the ideal means of filling his or her needs for validation, organization, finding potential new victims and trafficking in child pornography.
>
> 2.   The computer allows them to communicate with people of similar interests, this is actually the most important and compelling reason offenders are drawn online. Through online services and specialized bulletin boards, the[y] can use their computers to communicate and exchange information with people of similar interest and allows them to get immediate feedback and validation with perceived anonymity and less risk of detection.
>
> 3.   The computer also allows them to organize their collections and correspondence, the maintenance of financial records, for those who have turned their child pornography into a profit-making business and finding victims with minimum risk of identification.
>
> 4.   There are persons whose sexual objects are children. They receive gratification and satisfaction from actual physical contact with children and from fantasy involving the use of pictures, and other photographic or art mediums and writings on or about the sexual activity with children.
>
> Furthermore, these people collect sexually explicit materials consisting of photographs, magazines, motion pictures, videotapes, books, slides depicting juveniles, which they use for their own sexual gratification and fantasy. These people use sexually explicit materials . . .for lowering the inhibitions of children, sexually stimulating children and themselves, and for demonstrating the desired sexual acts before, during and after sexual activity with children. These people rarely, if ever, dispose of their sexually explicit materials, especially when it is used in the seduction of their victims, and those materials are treated as prize possessions.

> They also often correspond or meet with one another to share information and identities of their victims as a means of gaining status, trust, acceptance and psychological support. These people rarely destroy correspondence received from other people with similar interests unless they are specifically requested to do so.
>
> Your affiant knows from training and experience that computers and electronic storage media are commonly used to store the above information, lists of names, e-mail addresses and images. It is also used to correspond with others and exchange collections of images, names and other information to facilitate child molestation and exploitation.

(Trans., Ex. 4 (Aff.))

Following the Defendant's indictment on the instant charge, Wright and Special Agent Kari Foster of the United States Secret Service, who testified at the suppression hearing, met with Keller at the Humboldt Police Department on March 1, 2006. Earlier in the day, the two officers had been at Keller's home interviewing family members when the Defendant arrived on the scene. They agreed to meet at the police station later that day. The three met in the parking lot at approximately 4:00 p.m. and walked through the back door of the station and down a hallway to an interview room. At that point the Defendant had not been placed under arrest. However, Foster advised that after entering the station Keller would not have been free to leave, as an arrest warrant had been issued. Once in the interview room, Wright advised Keller of the arrest warrant, and produced a waiver of rights form and read it to Keller, who acknowledged his understanding of his rights and signed the form. He then gave a statement. It was Foster's testimony that he did not request an attorney prior to making the statement. She recalled that the interview lasted about 30 minutes. Afterward, Foster took a tape-recorded statement from the Defendant, which she transcribed. The initial interview began at 4:30 p.m. and the tape-recorded statement was initiated at 5:01 p.m., lasting approximately ten minutes.

On cross-examination, Foster stated that

> [a]fter I had interviewed him initially and then I asked him if he would like to give a written statement or if he would give me a written statement, which he refused to give me a written statement, I think he said because he didn't like the way his handwriting looked, I then asked him if he would give a taped statement and we brought out the tape recorder. At that time he said something to the effect of, and again, I'm paraphrasing here, I don't know if I should have a lawyer now, something like that. Dennis Wright then pulled the form out again, read it to him again in its entirety. He did not make any statement that he wanted a lawyer or that he wanted to stop the questioning. We then turned the tape recorder on and obviously read him his rights again on the tape.
>
> \*   \*   \*
>
> My recollection is that when we brought out the issue of a written statement or a tape recorded statement, that gave him a bit of concern, and he said something to the effect of, I'm not sure if I need a lawyer for this, I don't know if I need a lawyer for essentially the second part of what I was wanting to do, either written or tape recorded. . . .

## POSITIONS OF THE PARTIES AND ANALYSIS

In his first motion to suppress, the Defendant argued that he was entitled to a hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), in which the Supreme Court recognized the right of a criminal defendant to challenge the sufficiency of a previously issued and executed warrant on the grounds that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56, 98 S.Ct. at 2676. If "the defendant can show by a preponderance of the evidence that the affiant either knowingly or with reckless disregard included [such a] statement in the affidavit, then any evidence and fruits of the search would be excluded." United States v. Rodriguez-Suazo, 346 F.3d 637, 648 (6th Cir. 2003). "When law enforcement officials have acted unreasonably, the exclusionary rule [articulated in the Fourth Amendment] exists to suppress evidence gained through unconstitutional means." Id. at 644.

5

At the suppression hearing, counsel for the Defendant argued that someone with Wright's knowledge and experience as referred to in the affidavit for the second search warrant would know Ritalin could not render his alleged victim unconscious. Thus, the argument went, Wright's inclusion of such information in the warrant affidavit was reckless based upon his experience. However, as noted by the Court at the hearing, the Defendant's characterization of the affidavit is misleading, as it does not in fact identify the pills given to the victim to render her unconscious as Ritalin. Accordingly, the motion for a Franks hearing on that basis was denied.[1]

Keller also submits that neither search warrant was supported by probable cause. The Fourth Amendment protects "[t]he right of the people to be secure in their . . . houses" and, among other things, requires that warrants be issued based on probable cause and supported by oath or affirmation. U.S. Const. amend. IV. The language of the amendment "unequivocally establishes the proposition that at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Payton v. New York, 445 U.S. 573, 589-90, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980) (citation and internal quotation marks omitted).

The Fourth Amendment mandates that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the [issuing] judge can conclude from the totality of the circumstances . . . there is a fair probability that

---

[1] In his first motion, the Defendant also argued that a Franks hearing was warranted based on Wright's failure to determine the veracity of the victim's assertions, pointing out that the majority of such charges turn out to be false. However, since this issue was not presented by Keller at the suppression hearing, the Court assumes it has been abandoned.

contraband or evidence of a crime will be found in a particular place." United States v. Woosley, 361 F.3d 924, 926 (6th Cir. 2004), reh'g en banc denied (May 28, 2004) (citations and internal quotation marks omitted).  However, "even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997) (citations and internal quotation marks omitted).

> In determining whether an affidavit establishes probable cause, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

United States v. Carpenter, 360 F.3d 591, 594 (6th Cir.), cert. denied, 543 U.S. 851, 125 S.Ct. 261, 160 L.Ed.2d 84 (2004) (quoting Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).  The Court is instructed to refrain from reviewing a search warrant affidavit in a "hypertechnical" manner or engaging in "line-by-line scrutiny."  Instead, courts are to consider "whether the totality of the circumstances supports a finding of probable cause." Woosley, 361 F.3d at 926.  The issuing judge's determination as to probable cause is to be afforded "great deference" and should be overturned "only if [he] arbitrarily exercised his discretion." Id.  "The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."  United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996).  "[I]n seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." Rodriguez-Suazo, 346 F.3d at 643 (citation

omitted).

In this case, the affiant averred before the issuing judge that the alleged victim told him her father had sexual intercourse and viewed pornographic movies, books and pictures with her. Therefore, he sought a warrant to search Keller's residence for "pornographic movies, magazines and electronic photographs stored on a computer." (Trans., Ex. 1)  While there is some factual basis for a probable cause finding as to the computer, it is a close question.[2]  Nonetheless, pornographic movies and pictures could be found or stored on a computer which was located inside the Defendant's house.  See Davis, 111 F.3d at 1478-79 (search warrant directing officers to search for items pertaining to the display of pornographic material in violation of state obscenity law encompassed computer equipment falling into that category, as the item was one that might be

---

[2] The Defendant also submits that the probable cause finding was stale.  In deciding this issue, the Court is to "consider the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information."  United States v. Gardiner, 463 F.3d 445, 471 (6th Cir. 2006) (quoting United States v. Helton, 314 F.3d 812, 822 (6th Cir. 2003) (internal quotation marks omitted).  Courts addressing staleness challenges in pornography cases have recognized that pedophiles and collectors of pornography, particularly involving children, often hoard their material and do not discard it, and that information relative to "continuing offenses," such as collecting pornography and sexual abuse, have more durability than offenses that are random or isolated.  See United States v. Shields, 458 F.3d 269, 279 n.7 (3d Cir. 2006) (information nine months old not stale); United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006) (two year old information not stale in child pornography case); United State v. Gourde, 440 F.3d 1065, 1071 (9th Cir. 2006), cert. denied, ___ S.Ct. ___, 2006 WL 1993215 (U.S. Nov. 13, 2006) (No. 06-5251) (information not stale where four months had elapsed since closing of pornographic website and execution of search warrant); United State v. Riccardi, 405 F.3d 852, 861 (10th Cir.), cert. denied, ___ U.S. ___, 126 S.Ct. 299, 163 L.Ed.2d 260 (2005) (information five years old not stale in child pornography case); United States v. Newsom, 402 F.3d 780, 783 (7th Cir. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1455, 164 L.Ed.2d 151 (2006) ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned").  In this case, the affidavit reflected that the alleged victim had sexual intercourse and viewed pornographic pictures with her father as late as September and October 2005, respectively.  Two months later, the information, based on the cited cases, was by no means stale.

evidence of such activity). The issue need not be resolved, however, as the evidence of pornography contained on the computer escapes exclusion by virtue of the good faith exception to the warrant requirement articulated by the Supreme Court in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), even if the nexus between the computer and the pornographic images alleged were too tenuous to establish probable cause. See United States v. McCraven, 401 F.3d 693, 698 (6th Cir.), cert. denied, ___ U.S. ___, 126 S.Ct. 639, 163 L.Ed.2d 517 (2005) (close question of whether warrant supported by probable cause need not be resolved because denial of motion to suppress proper under Leon); see also Irving, 452 F.3d at 125 ("in a doubtful case, we accord preference to the warrant"). The Leon exception "allows for the inclusion of evidence obtained by an invalid warrant if the officers reasonably and in good faith relied on the warrant at the time the search was conducted." United States v. Pruitt, 458 F.3d 477, 480 (6th Cir. 2006) (citing Leon, 468 U.S. at 922, 104 S.Ct. 3405). "The relevant question is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." McCraven, 401 F.3d at 698 (quoting Leon, 468 U.S. at 922 n.23, 104 S.Ct. 3405). "The rationale behind the exception is that the exclusionary rule is meant to deter unlawful police conduct." United States v. Abboud, 438 F.3d 554, 578 (6th Cir. 2006), cert. denied, ___ U.S. ___, 127 S.Ct. 446, 75 U.S.L.W. 3106, 75 U.S.L.W. 3204, 75 U.S.L.W. 3205 (U.S. Oct. 16, 2006) (No. 06-348).

> The Leon decision . . . identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

9

United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005). In determining whether the good faith exception applies, the Court is not to attempt an "expedition into the minds of police officers" in order to ascertain their subjective beliefs concerning the warrant's validity. Leon, 468 U.S. at 922 n.23, 104 S.Ct. at 3420.

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." United States v. Frazier, 423 F.3d 526, 533 (6th Cir. 2005) (quoting Leon, 468 U.S. at 922). The Leon Court observed that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. . . . If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments." Leon, 468 U.S. at 916, 918, 104 S.Ct. at 3417-18. Therefore, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Id., 104 S.Ct. at 3418.

In this case, the Court cannot say that a reasonably well trained officer would have necessarily known that the affidavit at issue was insufficient, if in fact it was.[3] Based on the Court's

---

[3]The Court notes that Tennessee Code Annotated § 39-17-911 prohibits the exhibition or making available to a minor of

> [a]ny picture, photograph, drawing, sculpture, motion picture film, video game, computer software game, or similar visual representation or image of a person or portion of the human body, which depicts nudity, sexual conduct, excess violence, or sado-masochistic abuse, and which is harmful to minors.

Tenn. Code Ann. § 39-17-911(a)(1). Thus, an experienced officer, such as Wright, could have

finding that Wright did not act unreasonably in his seizure and search of the computer, it need not address the efficacy of the second search warrant.

The third motion to suppress addresses certain statements made by the Defendant following his arrest, which he argues violated his constitutional rights. Generally speaking, the failure to administer the constitutional rights warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and obtain a waiver of those rights prior to custodial questioning renders any statements obtained by the police inadmissible at trial. Mo. v. Seibert, 542 U.S. 600, 601, 124 S.Ct. 2601, 2603, 159 L.Ed.2d 643 (2004). "Conversely, giving the warnings and getting a waiver generally produces a virtual ticket of admissibility, with most litigation over voluntariness ending with valid waiver finding." Id., 124 S.Ct. at 2603.

"[W]hen a suspect has invoked the right to counsel, he may not be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Koras v. Robinson, 123 F.App'x 207, 210 (6th Cir. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1024, 163

---

reasonably concluded that Keller had violated this statute by displaying pornography to the minor in connection with the sexual abuse. The affirmative defense provisions in the statute, Tenn. Code Ann. § 39-17-911(d), does not salvage the Defendant's position because the fact situation present in the instant case does not necessarily fall within one of these defense scenarios.

In addition, the Defendant contends that execution of the search warrant violated Tennessee Code Annotated § 39-17-903, which sets forth procedures relative to the seizure of materials pursuant to § 39-17-911. However, "the appropriate inquiry for a federal court considering a motion to suppress evidence seized by state police officers is whether the . . . search[] or seizure violated the Fourth Amendment. The fact that the . . .search[] or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended." United States v. Wright, 16 F.3d 1429, 1437 (6th Cir.), cert. denied, 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994).

L.Ed.2d 867 (2006) (citing Edwards v. Ariz., 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)) (internal quotation marks omitted). However, a "request for counsel must be express and unambiguous in order to require the cessation of questioning." United States v. Dupree, 323 F.3d 480, 486 (6th Cir. 2003).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As a general rule, statements made during a custodial interrogation in the absence of the procedural safeguards effective to secure the privilege against self-incrimination as set forth in Miranda are inadmissible. See United States v. Clark, 982 F.2d 965, 967 (6th Cir. 1993). An individual may waive his rights so long as the waiver is knowing, intelligent, and voluntary. See United States v. Doherty, 126 F.3d 769, 774 (6th Cir. 1997), cert. denied, 524 U.S. 917, 118 S.Ct. 2299, 141 L.Ed.2d 159 (1998), partially abrogated on other grounds, Texas v. Cobb, 532 U.S. 162, 168 n.1, 121 S.Ct. 1335, 1340 n.1, 149 L.Ed.2d 321 (2001). The Government bears the burden of establishing the validity of a waiver by a preponderance of the evidence. Id.

"[T]here must be an element of police coercion in order for a waiver to be found involuntary." Seymour v. Walker, 224 F.3d 542, 554 (6th Cir. 2000), cert. denied, 532 U.S. 989, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001) (citing Colorado v. Connelly, 479 U.S. 157, 169-71, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). Coercion with regard to the voluntariness of statements is found when "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." United States v. Mahan, 190 F.3d 416, 422 (6th Cir. 1999) (citing McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988)). The Court is to

look at the totality of the circumstances in making its determination, considering such factors as the defendant's age, education, and intelligence; whether he was informed of his constitutional rights; the length and extent of the interrogation; and the use of physical punishment such as the deprivation of food or sleep. Id. at 422-23. Other relevant factors include the accused's physical and emotional condition at the time of the statement, his expressed fears of violent reprisal, the proximity of the statement to a violent arrest, and the inherent coerciveness of the setting in which the statement was made. United States v. Murphy, 763 F.2d 202, 205 (6th Cir. 1985), cert. denied sub nom. Stauffer v. United States, 474 U.S. 1063, 106 S.Ct. 812, 88 L.Ed.2d 786 (1986).

First, the Court finds that Keller's request for counsel, to the extent he made one, was not "express and unambiguous." Therefore, the continued questioning thereafter did not violate his constitutional rights. Moreover, his confession was clearly voluntary. According to the uncontroverted testimony, Wright administered the Miranda warnings to the Defendant and presented him with a waiver form, in which he acknowledged that he understood his rights and wished to make a statement. There is no evidence whatsoever of police coercion. No verbal or physical threats were made. Nor is there evidence to suggest that weapons were brandished, or that food, drink or trips to the restroom were denied. According to the testimony, Keller was 35 years old at the time of the statement and held college and associates degrees. There is no evidence he suffered from a mental deficiency or illness or that he was of below average intelligence. It is undisputed the Defendant was made aware of his constitutional rights. Therefore, based on the totality of the circumstances, the Court finds that the statement made by Keller was a voluntary one. The Defendant's third motion to suppress is, therefore, without merit.

## CONCLUSION

Based on the foregoing, and for the reasons set forth herein, the motions of the Defendant to suppress evidence and statements are DENIED.

IT IS SO ORDERED this 22nd day of November, 2006.

                                      s/ J. DANIEL BREEN
                                      UNITED STATES DISTRICT JUDGE